UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
MEDITTERANEAN SHIPPING COMPANY ,
(USA) INC.,

                              Plaintiff,                      13 Civ. 1609 (HB)

                 -against-                      **OPINION & ORDER**

INTERNATIONAL FREIGHT SERVICES,
INC.,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**Hon. HAROLD BAER, JR., District Judge:**

       Plaintiff Mediterranean Shipping Company ("MSC" or "Plaintiff") brought this admiralty action against Defendant International Freight Services ("IFS" or "Defendant") to recover demurrage. Before the Court are cross motions for summary judgment. For the reasons below, Plaintiff's motion is GRANTED, and Defendant's motion is DENIED.

## BACKGROUND[1]

       Plaintiff MSC, on behalf of its principal, Mediterranean Shipping Company, SA, a Swiss entity, books carriage for cargo originating in the United States and collects demurrage. (Krusen Dec. ¶¶ 1, 3.)  Upon delivery of cargo, Plaintiff allows shippers a certain number of days to use and return Plaintiff's container, known as "free-time." (*Id.* ¶ 6.) If a shipper does not return Plaintiff's container within the allocated free-time, Plaintiff will charge a fee for demurrage. (*Id.*) Defendant IFS is a non-vessel operating common carrier ("NVOCC"). (Def.'s 56.1 ¶ 2.) As a NVOCC, Defendant arranges for ocean transportation of cargo for its principal by way of an ocean common carrier. (*Id.* ¶¶ 3-4; Krusen Dec. ¶9.)

       On September 23, 2008, Plaintiff issued a bill of lading number MSCULB254625 ("Bill of Lading") to Defendant for the carriage of one container, bearing registration number MSCU7089779 ("Container") from Baltimore, Maryland to Montevideo, Uruguay. (Pl.'s 56.1 ¶8; Krusen Dec. Ex. B.) The Bill of Lading identified Defendant as the "shipper." (Krusen Dec. Ex. B.) By its terms, Defendant was also considered a "merchant," and as such, "expressly…agree[d] to all the terms and conditions . . . on this side and on the reverse side of

---

[1] These facts are undisputed unless otherwise noted.

this bill of lading and the terms and conditions of the carrier's applicable tariff…" (Krusen Dec. Ex. B; Krusen Dec. Ex. A. at 1.) On October 23, 2008 the container was discharged from Plaintiff's vessel at the port of Montevideo where it remained unclaimed, until December 4, 2012, when the cargo was disposed of by Uruguay's Customs Authorities and the container was returned to Plaintiff. (Krusen Dec. ¶ 26; Def.'s 56.1 ¶12.) During this period, Plaintiff sent Defendant thirteen invoices for the container's outstanding demurrage and a letter demanding payment. (Krusen Dec. Exs. C, D.) Plaintiff filed this action on March 11, 2013. (Compl.)

## DISCUSSION

"Summary judgment is appropriate only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). The Court must "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in that party's favor." *Id.* "An alleged factual dispute regarding immaterial or minor facts between the parties will not defeat an otherwise properly supported motion for summary judgment." *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 84 (2d Cir. 2004). "[T]he existence of a mere scintilla of evidence in support of nonmovant's position is insufficient to defeat the motion; there must be evidence on which a jury could reasonably find for the nonmovant." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

**1. Laches**

"In admiralty actions, courts employ the equitable doctrine of laches to determine the timeliness of claims." *Dziennik v. Sealift, Inc.*, 2013 WL 5502916, at *3 (E.D.N.Y. Sept. 30, 2013)(citing *DeSilvio v. Prudential Lines,* 701 F.2d 13, 15 (2d Cir. 1983)). "In analyzing the laches arguments, courts must consider: (1) an analogous statute of limitations; (2) whether plaintiff delayed in filing her claims; and (3) whether the delay, if any, unfairly prejudices defendant." *Id.* at *4 (citing *DeSilvio*, 701 F.2d at 15.)

**a. Analogous Statute**

Where there is no specific statute of limitations, "courts apply the limitations period of the most analogous state law cause of action to the instant claim to determine the applicable statute of limitations." *Id.* (citing *Graham County Soil & Water Conservation Dist. v. United States,* 545 U.S. 409, 417 (2005)). However, a "narrow" exception applies "'when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes. . .'"

2

*Sandberg v. KPMG Peat Marwick, L.L.P.*, 111 F.3d 331, 336 (2d Cir. 1997)(quoting *Reed v. United Transp. Union,* 488 U.S. 319, 324 (1989)).

Although Plaintiff argues that the statute of limitations for New York contract law disputes should apply, Plaintiff's claims are prescribed by tariffs, which are regulated by the Shipping Act of 1984 ("Shipping Act").[2] *See* Pl. Summ. Judg. Mem. at 10-13. Thus, the Shipping Act "provides the most analogous statute of limitations." *SL Serv., Inc., d/b/a CSX Lines v. Int'l Food Packers, Inc.,* 217 F.Supp.2d 180, 184–185 (D.P.R. 2002) (applying the Shipping Act's three year statute of limitations to demurrage claims.)

### b. Prejudice and Delay

"In admiralty actions, the analogous state statute of limitations merely determines where the burden of proof falls[;] if a plaintiff files a complaint within the analogous statutory period the burden of proving unreasonable delay and prejudice falls on the defendant." *Dziennik,* 2013 WL 5502916, at *8 (E.D.N.Y. Sept. 30, 2013)(internal citations and quotation omitted). Here, Plaintiff charged demurrage each day, and Defendants received thirteen invoices reflecting these daily demurrage charges. (*See* Pl. 56.1 at ¶ 11; Krusen Dec. at ¶¶ 22-27, Ex. C.) To determine when the statute accrued, I consider each daily demurrage charge separately. *See, e.g.*, *SL Serv.,* 217 F.Supp.2d at185-186; *TAG/ICIB Services,* 570 F.3d at 68. Because the three year statute of limitations splits the time for which Plaintiff seeks damages, I will independently consider Plaintiff's claims that are outside that statute of limitations – i.e., before March 10, 2010— and those claims that are within that statute of limitations – i.e., after March 11, 2010.

### i. Demurrage Claims Accruing Before March 10, 2010

Plaintiff's claims for demurrage between October 31, 2008 and March 10, 2010 are outside the analogous statute of limitations. "When the suit has been brought after the expiration of a statutory limitations period, a court applying maritime law asks why the case should be allowed to proceed." *Guenther v. Sedco, Inc.*, 1998 WL 898349, at *4 (S.D.N.Y. Dec. 22, 1998)(citing *DeSilvio,* 701 F.2d at 16). "'The questions to be answered in the exercise of the district court's discretion are whether there existed satisfactory excuse for the delay in bringing

---

[2] Pursuant to the Shipping Act, all bills of lading must contain a tariff provision that governs the use of equipment once goods have been delivered to port. 46 U.S.C.§§ 40501(a)(1), (b)(4); *see also* Pl. 56.1 at ¶ 5, 13 (discussing MSC's tariff provision).

3

the cause of action and whether allowing the action to go forward despite the delay would unfairly prejudice the defendant.'" *Id.*at 3-4 (quoting *DeSilvio*, 701 F.2d at 15).

With respect to undue delay, Plaintiff explains that it did not bring this action until the container was emptied, at which time total demurrage could be calculated. As such, Plaintiff would not be required to bring multiple lawsuits for the same relief. Pl.'s Opp'n to Mot. to Dismiss at 4-5. "[E]ven a weak excuse (although not a non-existent one) may suffice to defeat laches if the absence of prejudice can be established." *Dziennik,* 2013 WL 5502916, at *10 (internal quotation omitted)(citing *Larios v. Victory Carriers, Inc.,* 316 F.2d 63 at 67 (2d Cir.1963) ("[W]here there has been no inexcusable delay in seeking a remedy and where no prejudice to the defendant has ensued from the mere passage of time, there should be no bar to relief."). Since Plaintiff has offered a "weak excuse," I will consider whether Defendant suffered prejudice.

No prejudice has been shown here, the Defendant has neither lost evidence nor experienced a change in position as a result of Plaintiff's delay. Further, Plaintiff sent numerous invoices informing Defendant that demurrage was accruing daily. *See* Pl. 56.1 at ¶ 11; Krusen Dec. at ¶ 22; Ex. C. The Defendant does not dispute that it received these invoices and was aware of the accrual of demurrage. *Cf. SL Serv.,* 217 F. Supp. 2d at 186 ("Defendant… proffers evidence that Plaintiff initially sent the invoices to the wrong address, even though it had the correct address for Defendant… and continued to do business with Defendant….") Thus, Defendant has not suffered prejudice as a result of Plaintiff's delay, and notwithstanding the three year statute of limitations, Plaintiff's claims between October 31, 2008 and March 10, 2010 are not barred by laches.

### ii.   Demurrage Claims Accruing After March 11, 2010

Plaintiff's claims for demurrage between March 11, 2010 and December 4, 2012 are within the analogous statute of limitations. "When the suit, even if long delayed, has been brought within the limitations period, the court asks why the case should not be allowed to proceed." *Guenther,* 1998 WL 898349, at *4 (citing *DeSilvio,* 701 F.2d at 16). The burden is on the Defendant to demonstrate undue delay and unfair prejudice. "There is a strong presumption that a plaintiff's delay in bring[ing] suit for monetary relief is not unreasonable as long as the analogous statute of limitations has not lapsed." *SL Serv.* 217 F. Supp. 2d at 186 (internal quotation omitted) (citing *Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc.,* 270 F.3d 298,

4

321 (6th Cir.2001). Defendant has made no attempt to demonstrate undue delay or prejudice. Thus, Plaintiff's claims for demurrage between March 11, 2010 and December 4, 2012 are not barred by laches.

**2. Demurrage**

"Demurrage is a standard fee associated with shipping through common carriers; so much so that courts have found it to be an implied term in maritime contracts." *Mediterranean Shipping Co., (USA) Inc. v. Worldwide Freight Servs., Inc.*, 2012 WL 3740683 at *6 (S.D.N.Y. Aug. 29, 2012)(internal citation and quotation omitted). A "'shipping contract consists of the bill of lading and the applicable tariffs lawfully published and filed.'" *Orient Overseas Container Line Ltd. v. Crystal Cove Seafood Corp.*, 2012 WL 463927 at *12 (S.D.N.Y. Feb. 14, 2012)(quoting *Missouri Pac. R. Co. v. Elmore and Stahl,* 377 U.S. 134, 144 (1964)(Douglas, J., dissenting)). Here, the contract between the parties was unambiguous, and Defendant's contractual obligations as a merchant under the Bill of Lading included "the responsibility to return to a place nominated by the Carrier the Container and other equipment before or at the end of the free time allowed at the Port of Discharge or the Place of Delivery. Demurrage, per diem and detention charges will be levied and payable by the Merchant thereafter in accordance with the Tariff." *See* Krusen Dec. Ex. A, Standard Terms & Conditions of the Contract of Carriage ¶14.8. Under the Shipping Act, Defendant, a NVOCC, is "a shipper in its relationship with an ocean common carrier" and therefore "accepts responsibility for payment of all charges applicable under the tariff or service contract." 46 U.S.C.A. §§ 40102 (16)(B), (22)(E). Thus, Defendant is liable for demurrage both by contract and by statute.

Defendant makes several arguments in an attempt to avoid its contractual obligations, including, (1) it did not have ownership or control of the contents of the container; (2) damages should be limited to the fair market value of the container, and (3) Plaintiff did not sufficiently mitigate damages. Each fails. First, Defendant's lack of ownership and control of the contents of the container is irrelevant in the face of its contractual obligations. "Shippers are absolutely liable for demurrage except (1) where a specific provision of a charter party exonerates the consignee from liability for demurrage; (2) where the delay is the fault of the carrier or those for whom he is responsible; or (3) where the delay is caused by a vis major." *Safmarine v. Colombia Container Lines (USA), Inc.*, 2010 WL 7134001 at *3 (E.D.N.Y. Dec. 15, 2010)(internal quotation and citation omitted). Further, damages need not be limited to the fair market value of

the container because "[d]emurrage is an accepted form of liquidated damages in shipping." *Mediterranean Shipping Co. (USA) v. Cargo Agents, Inc.*, 2011 WL 6288422, at *5 (S.D.N.Y. Dec. 15, 2011)(citing *Ocean Transp. Line v. AM. Philippine Fiber Ind.,* 743 F.2d 85, 90 (2d Cir.1984)). "[O]nce a plaintiff has demonstrated that there has been loss, that is, the loss of the use of a container, the amount of loss is measured by the demurrage rate." *Id.* I agree with other courts in this district that have observed, with respect to demurrage: "plaintiff is not attempting to reap a 'windfall profit' based on 'fine print'; rather, it is only attempting to collect fees to which it is entitled under a 'longstanding industry practice and the terms of its agreement.'" *Mediterranean Shipping Co., (USA) Inc. v. Worldwide Freight Servs., Inc.* 2012 WL 3740683 at *6 (Aug. 29, 2012)(quoting *Mediterranean Shipping Co. (USA) v. Cargo Agents, Inc.*, 2011 WL 6288422 at *4 (S.D.N.Y. Dec. 15, 2011)).

Defendant's argument that Plaintiff failed to sufficiently mitigate damages is also unavailing. "'[I]f plaintiff takes such [mitigating] action within the range of reason,' the breaching party remains liable if such reasonable attempts at mitigation fail." *APL Co. Pte. Ltd. v. Blue Water Shipping U.S. Inc.*, 779 F. Supp. 2d 358, 369 (S.D.N.Y. 2011)("*APL II*")(quoting *Ellerman Lines, Ltd. v. The President Harding*, 288 F.2d 288, 290 (2d Cir. 1961)). "'The standard of what reason requires of the injured party is lower than in other branches of law.'" *Id.* (quoting *Ellerman*, 288 F.2d 288, 290). Further, "the burden lies on the party challenging the mitigation efforts undertaken to show that they were unreasonable." *Fortis Corporate Ins., S.A. v. M/V CIELO DEL CANADA*, 320 F. Supp. 2d 95, 106 (S.D.N.Y. 2004)(internal quotation and citation omitted.)

Here, Defendant has failed to meet even this low burden. In considering mitigation, the Court need not determine "whether hindsight suggests that an objectively better choice [by APL] was available," but rather "whether the mitigation efforts actually chosen . . . were reasonable . . ." *APL Co. PTE Ltd. v. Blue Water Shipping U.S. Inc.*, 592 F.3d 108, 112 (2d Cir. 2010)("*APL I*") (citing *Ellerman,* 288 F.2d at 290). Plaintiff's thirteen invoices, in addition to its letter demanding payment, were reasonable steps, particularly in light of the fact that Plaintiff "had no contact with the actual owners of the cargo." Krusen Dec. at ¶¶ 9, 22. Plaintiff also attempted to contact the named consignee to give notice of arrival of the containers. *Id.* at ¶ 22. Ultimately, "the cargo was removed from the container by the authority of the local customs officials." *Id.* at ¶ 26. Perhaps Plaintiff could have done more to get the container emptied earlier

or to get Uruguayan customs to release the contents, but "[a]s the Second Circuit observed, 'to suggest that an injured party should have damages caused by another's breach reduced because the injured party failed to incessantly push a government agency to do its job more expeditiously is a highly dubious proposition.'" *APL II,* 779 F. Supp. 2d at 370 (quoting *APL I*, 592 F.3d at 112 n.4). Defendant also observes that Plaintiff could have mitigated damages by exercising a lien on the cargo, which was permitted under the Bill of Lading. However, the right to exercise a lien is not an obligation.

Thus, Plaintiff is entitled to demurrage fees during the time that the container was at the pier, totaling $66,192.30. This figure was reached based on the undisputed tariffs and other charges. The tariff provides for seven days of free time, which ran from October 24, 2008 until October 30, 2008. For the next seven days, from October 21, 2008 to November 6, 2008, the demurrage rate was $20.00 per day, for a total of $140.00. From November 7, 2008 until February 29, 2012, the demurrage rate was $40.00 per day, for a total of $48,400.00. From March 1, 2012 to December 4, 2012, the demurrage rate was $60.00 per day, for a total of $16,740.00. Krusen Dec. at ¶¶ 23-27. The other charges included a container service charge of $160.00, and "Local Charges" including "trucking, stevedore" of $752.30, Krusen Dec. at ¶ 29, which are within the scope of the Bill of Lading.

### 3. Interest

"'Although it is an abuse of discretion to deny prejudgment interest in admiralty cases except under extraordinary circumstances, the district court has broader discretion to determine when interest commences and what rate of interest to apply.'" *Mediterranean Shipping Co. (USA) v. Cargo Agents, Inc.,* 2011 WL 6288422, *6 (quoting *Independent Bulk Transport, Inc. v. Vessel Morania Abaco,* 676 F.2d 23, 25 (2d Cir.1982)). "In admiralty, interest is meant to be solely compensatory." *Id.* Since Plaintiff will be compensated through demurrage for the lost use of its shipping container, interest should commence on December 4, 2012, the day when Plaintiff recovered its container, and run until the entry of judgment. "The interest rate will be based on the average 4-Week Treasury Bill rate for that time period." *See id.*

### 4. Legal Fees and Expenses

The Bill of Lading entitles Plaintiff to recover legal fees and expenses incurred with the collection of freight and charges, including demurrage. *See* Krusen Dec, at ¶17; Ex. A, ¶ 14.7.

Thus, Plaintiff is entitled to reasonable attorney's fees totaling, $7,469.10. This figure is based on Plaintiff's supporting declaration and itemized invoice. Sakal Dec. ¶ 8, Ex. 4.

## CONCLUSION

I have considered the parties' remaining arguments and find them meritless. For the foregoing reasons, Plaintiff's motion for summary judgment is GRANTED. The Clerk of the Court is directed to enter judgment against Defendant for demurrage charges in the amount of $66,192.30 plus interest calculated at the average 4-Week Treasury Bill rate for the period between December 4, 2012 and the date of judgment, and in the amount of $7,469.10 for attorneys' fees and costs. The Clerk of the Court is instructed to close all open motions and this case, and remove it from my docket.

**SO ORDERED.**

Date: 3/26/14
New York, New York

**HAROLD BAER, JR.**
**United States District Judge**